[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 15, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11392
Non-Argument Calendar

_____

D. C. Docket No. 04-00228-CV-5-SPM-EMT

JAMES O'BRIEN,

Plaintiff-Appellant,

versus

JOHN SEAY, Health Services
Administrator, FCI Marianna,
DR. CASTRO, Unit Manager, FCI Marianna,
MR. RUNYON, Counselor, FCI Marianna,
MR. CAREY, Case Manager, FCI Marianna,
P A MORALES,
et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(January 15, 2008)**

Before ANDERSON, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant James O'Brien appeals <u>pro se</u>[1] the district court's denial of his request for additional time to complete discovery and the district court's grant of summary judgment in favor of Defendants-Appellees. O'Brien, a federal prisoner, filed suit against prison officials under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999 (1971), alleging that the conditions of his confinement at Federal Correctional Institution ("FCI")-Marianna violated his rights. O'Brien's claims arise from an altercation he had with his cellmate on August 15, 2002. In his complaint, O'Brien alleges that prison officials failed to protect him from his cellmate, failed to provide adequate medical treatment after the attack, and violated his due process rights by failing to file his formal grievances (BP-9 forms) with the warden. Because O'Brien's discovery requests were not calculated to create a genuine issue of material fact, and because O'Brien failed to properly exhaust his available administrative remedies as mandated by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. 1997e(a), we affirm the district court's rulings.

We review the district court's discovery decisions for an abuse of discretion.

---

[1] Because O'Brien is a <u>pro se</u> litigant, we liberally construe his pleadings. <u>See</u> <u>Sanders v. United States</u>, 113 F.3d 184, 187 (11th Cir. 1997).

2

United States v. R&F Props. of Lake County, Inc., 433 F.3d 1349, 1355 (11th Cir. 2005). We review de novo the district court's grant of summary judgment, applying the same standard as the district court and viewing the evidence and all factual inferences drawn therefrom in a light most favorable to O'Brien, the nonmoving party. Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006). Likewise, we review de novo the district court's interpretation of the PLRA's exhaustion requirement as applied to O'Brien's claims. See Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir. 1998).

Although O'Brien requested transfer to a new cell several times due to problems with his cellmate, prison officials failed to take action until after O'Brien's cellmate attacked him on August 15, 2002. As a result of the altercation, O'Brien suffered neck and back injuries. Over the next month, until O'Brien was transferred to a different prison on September 18, 2002, he sought treatment numerous times, but he was unsatisfied with the medical care he received. On September 15, 2002, O'Brien submitted a BP-9 grievance concerning the denial of his requests to be separated from his cellmate. On September 18, 2002, as he was being transferred out of FCI-Marianna, O'Brien submitted a second BP-9 grievance, this time concerning the lack of adequate medical treatment following the attack. O'Brien has not produced a receipt evidencing

3

either submission.

On November 4, 2002, after receiving no response to either grievance, O'Brien wrote to the Administrative Coordinator at FCI-Marianna to check on the status of his grievances. O'Brien attached carbon copies of the text that he had typed on his BP-9s. Iris Basford, the warden's secretary, responded to O'Brien on November 25, 2002, and informed him that FCI-Marianna had no record of either BP-9.

After receiving Ms. Basford's letter, rather than refile his BP-9 grievances at the institutional level, O'Brien proceeded to the next step of the grievance process by filing two BP-10 grievances with the regional office. The regional office instructed O'Brien to file BP-9 grievances with FCI-Marianna before proceeding to the BP-10 level. Instead of refiling his BP-9s, however, O'Brien filed two BP-11 grievances with the central office. Like O'Brien's BP-10s, his BP-11s were rejected because he had not refiled his BP-9s. After the central office rejected his BP-11s, O'Brien again failed to refile his BP-9s, choosing instead to initiate the instant suit in federal court on January 14, 2004.

Over two years after the commencement of this suit, and after O'Brien had received discoverable information necessary to support his case, Defendants-Appellees moved for summary judgment based, inter alia, on O'Brien's failure to

4

refile his BP-9s as instructed. At this point, O'Brien sought further discovery, arguing that he needed to locate two prisoners. The district court denied O'Brien's request for further discovery and granted summary judgment on behalf of Defendants-Appellees.

## I.

Having carefully reviewed the record and the briefs of the parties, we discern no error regarding the district court's discovery rulings. On appeal, "a party must be able to show substantial harm to its case from the denial of its requests for additional discovery." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1219 (11th Cir. 2000). Although Fed. R. Civ. P. 56(f) allows a party opposing summary judgment to move the court to permit additional discovery,

> [t]he party seeking to use rule 56(f) may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 843-44 (11th Cir. 1989) (quotations omitted). O'Brien failed to demonstrate that the affidavits he sought from two inmates would create a genuine issue of material fact. The inmates could not provide any information on O'Brien's attempts to exhaust his available administrative remedies, and O'Brien does not even allege that he ever refiled his

5

BP-9s after receiving Ms. Basford's letter. Because O'Brien failed to show the relevance of the discovery he sought or how the denial of discovery substantially harmed his case, the district court did not abuse its discretion in limiting discovery and considering the motion for summary judgment.

## II.

We also agree with the district court's conclusion that O'Brien failed to properly exhaust his available administrative remedies, and thus, the district court properly granted summary judgment on O'Brien's claims that prison officials failed to protect him and failed to provide adequate medical treatment. Under the PLRA, a confined prisoner must exhaust all administrative remedies available before filing a federal action with respect to prison conditions. See 42 U.S.C. § 1997e(a). A civil action with respect to "prison conditions" means "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2). The mandatory exhaustion requirement in § 1997e(a) applies to Bivens claims. Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998).

In deciding whether a prisoner has exhausted his administrative remedies, we do not review the effectiveness of those remedies, but rather whether remedies

6

were available and properly exhausted.  Id. at 1328.  A prisoner seeking to exhaust remedies must comply with applicable procedures because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford v. Ngo, __ U.S. __, 126 S. Ct. 2378, 2386 (2006); see also Jernigan v. Stuchell, 304 F.3d 1030 (10th Cir. 2002) (finding that where a grievance submitted to a warden was allegedly lost or misfiled and inmate did not refile with the warden as instructed by the director, the inmate had not exhausted his remedies and was not entitled to file in federal court); Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (holding that filing of an untimely grievance does not properly exhaust a prisoner's administrative remedies).

The Bureau of Prisons ("BOP") has established a grievance procedure, which consists of four sequential levels, for prisoner complaints.  28 C.F.R. §§ 542.10–542.19.  First, a prisoner must seek resolution of the issues through informal grievance using Form BP-8.  28 C.F.R. § 542.13(a).  If unsuccessful, a prisoner may then file a BP-9 formal written complaint with the institution within twenty calendar days following the date on which the incident occurred.  28 C.F.R. § 542.14(a).  Next, a prisoner may appeal the institution's decision by filing a BP-10 grievance with the Regional Director.  28 C.F.R. § 542.15.  Finally, a prisoner may appeal the Regional Director's response by filing a BP-11 grievance with the

7

central office's General Counsel for the BOP.  28 C.F.R. § 542.15(a).

Having carefully reviewed the record and the briefs of the parties, we conclude that O'Brien failed to properly exhaust his administrative remedies.  In the first instance, concerning O'Brien's complaints about his requests to change cells, O'Brien filed his BP-9 on September 15, 2002, more than twenty calendar days after the altercation with his cellmate on August 15, 2002.  Because O'Brien failed to demonstrate a valid reason for his delay, this filing was untimely under the BOP regulations.  Furthermore, despite being put on notice by Ms. Basford that FCI-Marianna had no record of his BP-9 grievances, O'Brien never attempted to refile at the institutional level.  Even when BOP officials at each successive level of review instructed O'Brien to refile his BP-9s, O'Brien neglected to do so.  Because it is undisputed that O'Brien failed to perfect the filing of his grievances at the institutional level, O'Brien failed to properly exhaust his available administrative remedies, and the district court properly granted summary judgment in favor of Defendants-Appellees on O'Brien's claims of failure to protect him and failure to provide adequate medical care.

**III.**

The district court also properly granted summary judgment on O'Brien's claim that prison officials violated his due process rights when they failed to

8

deliver his initial BP-9s to the warden. Even assuming O'Brien has a constitutionally protected interest in the grievance procedure, and even assuming prison officials wrongfully failed to file his initial grievances, O'Brien was not denied due process where he had several opportunities to resubmit his BP-9 grievances, but he failed to do so. Thus, the district court did not err in granting summary judgment on O'Brien's due process claim.

Accordingly, we affirm.

**AFFIRMED**[2]

---

[2]Appellant's request for oral argument is **DENIED**.